## GOMEZ'S HEIRS vs. STOKES.

*Third District Court for Monterey Co., April T.*, 1858.

EVIDENCE—EJECTMENT—PROCEEDINGS BEFORE ALCALDES AS JUDGES OF COURTS OF FIRST INSTANCE.

The rule that excludes public documents, papers, and records, as evidence, unless found in the receptacle, or in the possession of the custodian assigned by law, must be relaxed when applied to proceedings had prior to the establishment of the government of the *United States* in this state, before alcaldes, in their character of judges of courts of first instance, on account of the loose and informal manner of their conducting such proceedings.

Courts must, under peculiar circumstances, so modify rules of evidence, by making exceptions, as to protect rights and administer justice—and not enforce rules intended for the prevention of fraud, so as to encourage and protect fraud.

Proceedings in insolvency were instituted by *A.*, in 1847–1848, before *B.*, an alcalde; *C.*, the clerk of *B.*, had possession of the papers in said proceedings; in 1849 he died, and they were found by his administrator, labelled, "papers of *A.'s* rancho." In said proceedings said rancho of *A.* had been sold, and *D.* became the purchaser. *C.'s* administrator delivered said papers to *D.* In ejectment brought by the heirs of *A.* against *D.*—

*Held,* that the papers might be admitted, in the absence of any proof that there were any other proceedings, or any fraud or imposition, or that there were no such proceedings.

In such proceedings *A.* did not name three creditors in his petition, but when presented there were four before the alcalde, with the amount of their claims; and in the subsequent proceedings six appeared.

*Held,* that the omission of *Gomez* to name three creditors in his petition, was a formal defect, which, under the circumstances, did not render the proceedings void on the ground that the court had not jurisdiction.

In such proceedings the trustees sold certain real estate, belonging to the insolvent, at private sale, with the consent of the alcalde, and of the creditors. In ejectment by the insolvent's heirs, against the grantee,—

*Held,* that the fact that the sale was not at auction, did not invalidate it.

The sale was not made by an order of the alcalde.

*Held,* that the Mexican law gave the creditors the absolute *jus disponendi* of the insolvent's property, subject to a supervisory control of the alcalde, and, therefore, he having actually assented, taken in view of the loose manner of conducting such judicial proceedings, a formal order was unnecessary.

After said sale, *A.*, the insolvent, gave up the possession of the rancho to the grantee of the trustees, and he and the creditors always assented to the validity of the proceedings.

*Held,* that *A.* would have been *estopped* from setting up title to the land, and his heirs are equally *estopped.*

27

Ejectment brought by the heirs of a deceased insolvent, against the grantee of certain real estate, sold by the trustees appointed in the proceedings in insolvency. The necessary facts are fully referred to in the opinion.

*Sloan & Johnston,* for plaintiffs.

*Hawes & Ashly,* for defendants.

HESTER, J.—This is a suit brought for a tract of land. Both parties claim title thereto, under *Gomez,* the ancestor of the plaintiffs, and admit the title to have been in the ancestor.

The proof of the plaintiffs establishes the death of the ancestor to have occurred in 1851 ; that they are his heirs at law. Therefore, unless the defendants have established that the ancestor, at his death, was divested of the property in dispute, the same, by the law of descent in this state, descended to the plaintiffs ; and if so, they are entitled to recover in this action.

The defendants claim under a judicial sale, had in a proceeding of insolvency instituted by the ancestor of the plaintiffs, in his lifetime, under the Mexican law. To establish their claim they offered the record of the proceedings in insolvency, of said *Gomez,* had before alcalde *Colton,* in the years 1847 and 1848. To this proof the plaintiffs objected, because this record came from the defendant, *Stokes,* who was not its proper custodian ; that the law required it to be kept by the clerk of the county in which said proceedings were had, and not having been so kept, it is not entitled to credit, and cited *statutes* 1850, 80, § 30 ; 1 *Starkie on Ev.,* 202, 252, 256, 189, 192.

To determine as to the admissibility of this evidence, it is necessary to determine the character of the court in which these proceedings were had, the time when, and their nature. The proof establishes the following facts : that they were had in the years 1847 and 1848, upon the application of *Gomez,* before one *Colton,* who was then the alcalde of Monterey, and possessed the power of discharging the duties of a court of first instance, and that *Garner* was his secretary, who departed this life in 1849; that *Little* was the administrator of *Garner,*

among whose papers he found, in the year 1850, a bundle of papers labelled " papers of *Gomez's* rancho ;" that this bundle he handed to *Stokes*, the same not having been filed with the clerk of the county of Monterey since its organization ; that no proceedings of the said *Gomez*, in relation to his insolvency, were to be found in the clerk's office after the most diligent search, except the deed under which *Stokes* claims the land in controversy, and a mortgage made by him. The defendants further proved the execution of the various papers relating to the said proceedings of *Gomez ;* his statements, admitting the existence of such proceedings ; the sale of the property to *Stokes* for $3000 ; *Stokes'* payment of the purchase money, and the expenses of the court of said *Colton* in said proceedings ; the surrender of the land to *Stokes* after his purchase, by *Gomez ;* the acquiescence of *Gomez* therein until his death, and the acquiescence of the creditors.

The reason of the law, that papers and records should come from the proper repository, is, to give them credit, and to prevent imposition and fraud.

It is well known that public documents, papers, and records, which, by the usages of civilized nations, have assigned them a proper receptacle and custodian, were not so kept in *California* before the revolution and the institution of our government here ; that the rule referred to was not adhered to by the keepers of such records and papers as those now before the court. And now to decide that such records should have no credit, and be rejected, because not found in the proper place fixed by law for their keeping, would be upsetting many of the landed titles in this country. And when there has been no attempt made by plaintiffs to show that there were different and other proceedings than those the papers purport to represent, or to show fraud or imposition, or that no such proceedings were had, the enforcement of the rigid rule contended for would not guard against fraud, but would encourage and protect fraud. Courts must, under such circumstances, so modify the rule by making exceptions, as to protect rights and administer justice. The ruling, therefore, upon the trial of this cause, in receiving the record evidence, is adhered to, and the evidence retained. The question then presented is, whether, from the testimony in this cause, the plaintiffs have title to the land sued for.

It appears from the evidence that in February, 1847, an attachment issued against the lands of *Gomez*, in favor of one of his creditors, and final proceedings therein were postponed for eight months; that subsequently other attachments issued, some against his personal property, others against his lands, and that final proceedings and sale were to be had therein about the first of November, 1847; that on the 3d day of Nov., 1847, he, *Gomez*, petitioned the alcalde for a postponement of final action therein. In the absence of testimony it must be presumed that the petition was not granted; that on the 4th day of Nov., 1847, *Gomez* applied for the benefit of the insolvent law, and for that purpose made a surrender of his property to his creditors; that the alcalde entertained jurisdiction, and decreed notice for a meeting of those creditors in the port of Monterey, on the 26th day of Nov., 1847; and as to the other creditors, that notice be given for their meeting forty days thereafter. That on the 26th day of Nov., the creditors in Monterey met, and *Gomez* delivered his personal property to them under said proceeding, which they accepted; and they agreed that *Dias* should take charge of it, and account to the creditors for its market value, and that the proceeds should be divided amongst them, and that the house be rented for one year. The creditors at this meeting appointed *Walter* and *Garner* their trustees and representatives, there being no objections made by other creditors; that on the 14th day of Feb., 1848, *Gomez* obligated himself to deliver to said trustees the muniments of his title to his rancho, which he afterwards fulfilled; that on the 5th day of April, 1848, the rancho was advertised for sale; that on the 5th June, 1848, the creditors met and authorised the trustees to sell the rancho to *Stokes;* that on the 7th day of the same month, a deed was made by the trustees to *Stokes*, for the rancho, in the name of the creditors; that on the 8th day of June a mortgage was executed by *Stokes* to the trustees, pursuant to the contract of sale, to secure the payment of the purchase money; that afterwards the purchase money was paid by *Stokes*, and the debts of *Gomez* cancelled, and that the several steps taken by the creditors and their trustees in the said proceeding in insolvency, and said sale, were controlled and sanctioned by said alcalde.

Gomez's Heirs *vs.* Stokes.

It is objected that these proceedings were not valid, because the alcalde had no jurisdiction thereof, on the ground that three creditors were not named in *Gomez's* petition. Considering the looseness of judicial proceedings in *California* prior to our state government, much injustice will be done if objections to formal defects should obtain. When *Gomez* made his application there were at least four creditors before the alcalde, with their names and amount of claims specified ; in the subsequent proceedings, at least six creditors appeared. *Gomez* gave the court jurisdiction of his person by his application ; the appearance of the creditors gave the court jurisdiction of them ; and as to the subject matter of *Gomez's* application, none can doubt the court's jurisdiction. Therefore this objection does not obtain.

It is also urged by the plaintiffs that the trustees could not sell the land at private sale. The facts proven authorize the inference that *Gomez*, the creditors, and the alcalde, were all present and consenting to the sale. They were the parties interested, and had a right to waive any particular mode prescribed for such sales, and adopt some other mode. This was done, the creditors, who were more interested than any other person, expressly authorising it. Therefore this objection does not obtain.

It is further objected that the creditors had no power to sell the rancho except by an order of court. It seems, by the Spanish authorities, that the creditors had the whole control over the property in such cases, whether movable or immovable, of the debtor, subject, however, to a superintending control of the court—the same that administrators had at common law, over the personalty of the deceased. If this view be correct, the creditors had power to sell the rancho. But giving the proceedings in said case of insolvency a fair and rational construction, considering the time when, and the court in which, they were had, and the looseness which prevailed in such courts, I think from the beginning to the end of them they partake of a judicial nature. The alcalde was clothed with powers in two capacities—one as notary public, the other as judge. And when proceedings were had before him which ought to be of a judicial character, and nothing appearing to the contrary, the court ought so to consider them. The petition made to him,

his decree for a meeting of, and notice to, the creditors, the sale, the the making of the deed and mortgage, were under his superintending control, and were his judicial proceedings so far as the papers and testimony show his action—fully establishing the fact of his consent to the sale—a formal decree entered by him could do no more.

But this objection comes with poor grace from the heirs of *Gomez*, the person who produced, by his action, this state of things. He set this judicial ball in motion by his application—he surrendered his property to his creditors, and after the sale he delivered possession to *Stokes*—he consented to all the proceedings—produced by this means the cancellation of his debts—and acquiesced in this state of things until his death. Now, when these proceedings have had the effect of cancelling his debts, which have been surrendered up by his creditors, should they be declared invalid? This would make stringent rules, applicable to other states of society and regular governments, the instruments of fraud, and destructive to the best interest of the people, when applied to loose governments and a crude state of judicial proceedings.

Furthermore, none of the creditors have objected. It is a rule of law that whatever, by reasonable diligence, a person might know, he is presumed to know. These proceedings were all of such a character that *Gomez* and the creditors, if they did not know *in minutiæ*, they might have known by proper diligence; the law, therefore, presumes their knowledge. If they had any objections they might have made them. Their silence proves their assent; and *Gomez*, by delivering possession of the rancho, and making no objections to the deed, is now *estopped* from objecting to the validity of said proceedings; and so are his heirs and the creditors. The objections, therefore to the validity of said proceedings are overruled. *Stokes*, therefore, by his purchase, acquired all the title that *Gomez* then had to said rancho, and that no right thereto descended to the plaintiffs, consequently they are not entitled to recover.

Judgment is therefore ordered for the defendants.